UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Gordon P. Malone,** | ) | **CASE NO. 1:08 CV 2644** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Erik Roncone, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon Motion of Defendants Erik Roncone and Rebecca Joyce for Summary Judgment (Doc. 43) and plaintiff's Motion for Summary Judgment[1] (Doc. 46). This is an action brought by a state prisoner alleging that he was denied religious materials and subjected to discrimination on the basis of his religious beliefs. For the following reasons, defendants' motion is GRANTED IN PART and DENIED IN PART and

---

[1] Plaintiff's motion was not filed until October 16, 2009 although dispositive motions were due by October 1, 2009. Therefore, it is untimely. Nonetheless, the Court has considered it.

1

plaintiff's motion is DENIED.

**Facts**

Plaintiff, Gordon P. Malone, *pro se*, a state prisoner, filed this Complaint against defendants, Lake Erie Correctional Institution (LECI), Security Threat Group Coordinator Officer Roncone, LECI Officer Belaney, LECI Institutional Inspector Fisher, LECI Deputy Warden Joyce, LECI Deputy Warden Compton, LECI Warden Richard Gansheimer, Ohio Department of Rehabilitation and Correction (ODRC) Chief Inspector Gary Croft, and ODRC Director Terry Collins. This Court previously issued a Memorandum of Opinion and Order dismissing all defendants except Roncone and Joyce and set forth the following background facts as alleged in the Complaint.

In March 2007, plaintiff ordered Islamic prayer beads and head coverings from a source outside of the prison. Although the purchase had been approved by the Islamic Chaplain, plaintiff was informed by Officer Milliman that he could not take possession of the materials unless they were approved by Religious Services. Three days later, plaintiff was contacted by Deputy Warden Joyce and was told the items would be returned to plaintiff's home address at his expense because he had not obtained the required approval.

Plaintiff made a second attempt to obtain the materials. He spoke to the Islamic Chaplain and asked for specific instructions. The Islamic Chaplain told plaintiff to have the materials mailed to the institution "in care of Islamic Chaplain Imam Wa'il Al-Masri." When the materials arrived at the prison, they were once again confiscated, and shipped back to plaintiff's home at his expense.

Plaintiff then spoke to Deputy Warden Joyce to obtain specific instruction for the

2

delivery of his Islamic materials. He was told to contact the Head Chaplain who told plaintiff to ship the materials to the prison "in care of Chaplain Vautin, LECI Religious Services." Plaintiff followed the instruction and his materials were again confiscated.

On June 1, 2007, Security Threat Group Coordinator Roncone collected all of plaintiff's personal property, including mail, religious materials, books, and papers, and labeled it as contraband. Plaintiff received a contraband sheet that referred to the confiscated items as "a tote full of radical papers," but he did not receive a conduct report. Plaintiff filed grievances and asked the Islamic Chaplain to intervene on his behalf. After speaking with the Chaplain, Roncone returned plaintiff's property. Plaintiff discovered his prayer beads were still missing.  They were not returned despite several attempts made by plaintiff.

As Ramadan approached, plaintiff desired to purchase Islamic books. In August 2007, he received written authorization from the Head Chaplain to receive the literature. When the books arrived, however, Roncone intercepted them. Both the Islamic Chaplain and the Head Chaplain approached Roncone to inquire about the books. The Islamic Chaplain was permitted to examine the books for objectionable content. Although the books received his approval, they were not given to plaintiff. Plaintiff made many attempts to obtain the books, but was eventually informed by Roncone that the books and the prayer beads had been destroyed.

Plaintiff contacted Deputy Warden Joyce who asked him to provide her with a list of the materials he desired and a brief synopsis of each.  Plaintiff complied but received no response. He encountered Joyce in the prison yard and presented her with a catalogue of religious materials. Upon returning to his cell, he discovered it had been searched and all of

3

the religious materials he had been permitted to keep in his cell had been confiscated.

In February 2008, plaintiff's cell was searched. He was placed in handcuffs and taken to segregation. He learned he was charged with unauthorized group activities based on his possession of materials classified as being "radical Muslim." His computer files at the library were also searched and reviewed. He was found guilty of the conduct charges. Plaintiff filed grievances to contest the hearing and the classification of his religious beliefs.

In support of the cross motions for summary judgment now pending before the Court, the affidavits of Joyce, Roncone, and plaintiff are submitted which offer the following facts.

Joyce, Deputy Warden of LECI, avers the following. The Ohio Department of Rehabilitation and Correction Administrative Rule 5120-9-19 provides the guidelines for receiving printed materials. Pursuant to that rule, an inmate may receive printed materials directly from the publisher or distributor without prior approval and may receive such materials from family members only with the prior approval of the Warden or designee.[2] Plaintiff had a package of printed material sent to him at LECI from his sister which included items plaintiff wanted to donate to other inmates. It is a violation of institutional rules to give or receive anything from other inmates. To Joyce's knowledge, plaintiff did not request prior permission to receive printed materials from a source other than the publisher or distributor.

---

[2] The Ohio Administrative Code states, "An inmate may receive a reasonable number of printed materials ... only directly from a publisher or distributor. Inmates may receive printed materials from other sources (e.g., family, friends, etc.) only with the prior approval of the warden or designee." O.A.C. 5120-9-19(B).

4

Joyce never confiscated any books or religious materials from plaintiff.  Nor did she instruct plaintiff to have printed materials sent in care of the Chaplain or LECI Religious Services.  Joyce did not receive a catalogue of religious materials from plaintiff. (Rebecca Joyce aff.)

Roncone, LECI Unit Manager and Security Threat Group Coordinator, avers the following. He did not collect or confiscate prayer beads from plaintiff. A memo written by plaintiff and entitled "Satellite Islamic Community of Huron C/D" is governed by Ohio Department of Rehabilitation Administrative Regulation 5120-9-37, which provides guidelines for inmate groups, and DRC Policy 73-GRP-01, which provides that no group of inmates will be given control or authority over other inmates.  By distributing and authorizing the memo, plaintiff was initiating and leading an unauthorized group in violation of Administrative Regulation 5120-9-37.  On June 1, 2007, a Correction Officer confiscated from plaintiff a tote filled with miscellaneous paperwork.  Roncone returned the paperwork to plaintiff on June 6, 2007 after reviewing it and finding nothing radical.    Roncone never confiscated property from the mail addressed to plaintiff. Plaintiff has been profiled as a member of the Security Threat Group "Radical Muslim" as recognized by the Ohio Department of Rehabilitation.  On January 16, 2008, a data search was initiated on the inmate use computers in the multi-media classroom of LECI's education department.  In this search, a file folder belonging to plaintiff was found containing several documents and audio files related to Islam including a document entitled "Islamic Truth."  The document was given to LECI Inman, Wael Almasri, who stated that the text was radical and not accepted in legitimate Islam.  Plaintiff was found to be in violation of Regulation 5120-9-37(B)(1) which prohibits possessing, creating, and reproducing material related to a Security Threat Group

5

(Radical Muslim) and fostering religious hatred.  On April 16, 2008, the Director of the Ohio Department of Rehabilitation and Correction found that plaintiff was validly charged with the proper rule infraction; there was substantial compliance with all applicable policies, rules, and procedures; there was sufficient evidence in the record to support the decision; and the penalty assessed was authorized and proportionate to the offense.  Roncone never spoke to the Chaplain about returning books to plaintiff.  Roncone was given a publication from the Chaplain entitled "The Muslim Mafia," but Roncone believed it to be pre-sorted standard mail rather than plaintiff's personal property.  (Erik Roncone aff.)

Plaintiff avers the following.  On three occasions, Joyce refused plaintiff possession of religious materials which were rightfully ordered from an authorized vendor.  Joyce also took a religious catalog from plaintiff and never returned it.  Roncone confiscated plaintiff's prayer beads and destroyed his religious books.  Roncone confiscated the tote from plaintiff.  Roncone maintained illegal custody of personal mail, a religious text, and two religious books.  Roncone also confiscated two religious books from the mail which plaintiff had rightfully ordered.  (pltf. aff.)

The Complaint sets forth the following claims.  Count One alleges violations of the Religious Freedoms Restoration Act of 1993 (RFRA) and International Religious Freedoms Act of 1998 (IRFA).  Count Two alleges a deprivation of religious freedom.  Count Three alleges a deprivation of religious freedom in violation of the First Amendment, violation of equal protection and due process, and discrimination in violation of the RFRA.  Counts Four, Five, Six, and Seven allege a violation of due process.  Count Eight alleges a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985.  Count Nine alleges a violation of

6

42 U.S.C. § 1986.

This matter is before the Court upon cross motions for summary judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) RFRA claims**

The RFRA has been found unconstitutional as applied to the states.  *City of Boerne v. Flores*, 521 U.S. 507 (1997).  Plaintiff asserts that his claims must not be dismissed because the RFRA remains good law as applied to the federal government.  Plaintiff is correct. *Weinberger v. Grimes,* 2009 WL 331632 (6th Cir. Feb. 10, 2009) (citing *Cutter v. Wilkinson*, 423 F.3d 579 (6th Cir. 2005).  But, plaintiff himself admits that he is a state prisoner in the State of Ohio.  (Compl. at 1)  Defendants Joyce and Roncone are employed at LECI.   LECI is run by a private corporation through a contractual agreement with the State of Ohio.  *See Beil v. Lake Erie Correction Records Dept.,* 282 Fed.Appx. 363 (6th Cir. 2008).  Accordingly,

8

plaintiff's claims are not against the federal government and his RFRA claims are dismissed.

**(2) IRFA claims**

Congress passed the IRFA to address threats to religious freedom occurring in countries other than the United States. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 282 F.Supp.2d 1236 (D.N.M.,2002). Plaintiff asserts that he finds it bewildering that laws protecting foreigners are inapplicable to United States citizens. Nevertheless, this law does not apply to plaintiff and these claims are dismissed.

**(3) RLUIPA and religious freedom claims**

Although plaintiff does not identify the Religious Land Use and Institutionalized Persons Act (RLUIPA) as the basis for any of his claims, defendants assert that he "appears" to be claiming a violation of this act. The Court will assume that plaintiff has alleged a violation of this act which provides:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A claim under RLUIPA includes four elements. Plaintiff bears the burden of proof on the first two elements: (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial. Once a plaintiff has established that his religious exercise has been substantially burdened, the burden shifts to defendants to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest. *Spratt v.*

9

*Rhode Island Dept. Of Corrections*, 482 F.3d 33 (1st Cir. 2007).

Defendants argue that plaintiff has not demonstrated that his religious exercise has been substantially burdened because the religious items were sent by his sister without prior approval and were not received directly from a publisher or distributor.  On this basis, defendants contend, Joyce acted properly in returning the items.

Plaintiff submits two affidavits of his sister, Yvonne Malone.  She avers that she purchased religious items and books from the Amana Islamic Book and Clothing Store and the items were mailed directly to plaintiff. The items were shipped by the Amana Islamic Book and Clothing Store where Yvonnne personally purchased and paid the shipping fee. The items were twice returned to Yvonne Malone at her home address by the prison without *return to sender* markings.  The Chaplain then gave her instructions as to how to re-send the items.  But, the items were again returned to Ms. Malone, this time with *return to sender* markings. (Yvonne Malone affs.)

Defendants contend that Yvonne Malone's affidavit fails to create an issue of fact because it shows that she purchased and sent the items to plaintiff, and that she resent them once they were returned to her. Defendants assert that Ms. Malone fails to state that the items were mailed to plaintiff by the Amana Islamic Book and Clothing Store.  Defendants argue that had the items been shipped directly from the store, they would not have been returned to Ms. Malone.

Construing the evidence in the light most favorable to plaintiff, however, Yvonne Malone's affidavit shows that the items were shipped by the store after she paid the shipping fee.  The prison regulation at issue does not require prior approval when items are shipped

10

directly from the distributor even though a family member, and not the inmate, requests the shipment. Because Joyce returned the items although they were not sent by plaintiff's sister, there is an issue of fact as to whether plaintiff's religious exercise was substantially burdened.[3]

Plaintiff asserts that Roncone discriminated against him by not returning items from the tote bag which had been seized from his cell. This Court disagrees. Roncone avers that he returned the paperwork to plaintiff after reviewing it and finding it to not be radical. Roncone incorporates the Contraband Control Slip which indicates that the chain of custody went from Roncone to plaintiff. Plaintiff contends that his signature was forged. Roncone, however, does not aver that the signature is plaintiff's. Rather, the undisputed evidence demonstrates that the Contraband Control Slip is an institutional form showing that the contraband was confiscated by the SRT [security threat] Team and labeled as "tote filled w/ misc. radical paperwork." The contraband was then given by the SRT Team to Roncone who then returned it to plaintiff. There is no signature requirement on the form. (Doc. 43 Ex. A-1) Plaintiff has not shown that his religious freedom was burdened by Roncone.

Plaintiff also contends that Roncone retaliated against him because of his religious affiliation, discriminated against him by profiling him as a radical Muslim, and targeted him as a security threat solely due to his religious beliefs. Plaintiff's subjective beliefs, however, are not sufficient to dispute Roncone's averments. While plaintiff asserts that the Inman

---

[3] To the extent, however, that plaintiff alleges that either defendant is liable in his or her individual capacity, these claims are dismissed. *See Garrison v. Dutcher,* 2008 WL 4534098 (W.D.Mich. 2008) (RLUIPA does not authorize individual capacity claims.)

11

stated that information confiscated from plaintiff was not radical, plaintiff provides no evidence to support this statement.  Thus, Roncone's averment that a memo written by plaintiff was in violation of prison policy regulating inmate groups is not disputed.  Likewise, Roncone's averment that the documents found in plaintiff's computer file folder contained material that the Inman considered radical and not accepted in legitimate Islam is uncontroverted.

Roncone has also established that plaintiff was found to have violated a prison regulation which prohibits possessing, creating, and possessing material related to a Security Threat Group (Radical Muslim) and fostering religious hatred, and that the ODRC Director found that plaintiff was validly charged and upheld the penalty.  Such evidence forecloses a First Amendment claim.  *See Cromer v. Braman,* 2009 WL 806919 (W.D.Mich. March 25, 2009) (citing *Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir.2007) (noting that a proven infraction of prison rules generally entitles defendant to summary judgment on First Amendment retaliation claims arising out of the violation) and *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir.2005) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates a retaliation claim.' ")

Finally, plaintiff's argument that Roncone improperly classified him as a security threat because he is a Muslim fails as he has no constitutionally protected right to be placed in a specific security classification. *Harbin-Bey v. Rutter,* 420 F.3d 571, 576 (6th Cir. 2005).

For these reasons, the claims against Roncone are dismissed.  The RLUIPA claims against Joyce in her official capacity remain.

**(4) Due Process**

Defendants assert that plaintiff is unable to show a procedural due process violation because the return of the materials by Joyce was not a random act given that it was done pursuant to procedures outlined in the Ohio Administrative Code. *See Bacon v. Patera,* 772 F.2d 259 (6th Cir. 1985) (Plaintiff must show that his deprivation resulted either from an established unfair procedure or there was a random, unauthorized act for which plaintiff does not have an adequate state remedy.)  As set forth above, however, there is an issue of fact as to whether Joyce properly returned the materials.

The tote of papers, on the other hand, was not wrongfully seized from plaintiff's cell by Roncone as "prison inmates have no reasonable expectation of privacy in their cells, and prison officials are free to seize any items that [do not serve] legitimate institutional interests." *Cromer v. Braman*, 2009 WL 806919 (W.D. Mich. March 25, 2009) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984) ).  Plaintiff also avers that Roncone confiscated his prayer beads and did not issue the proper forms so that plaintiff could utilize due process in order to retrieve them.  Plaintiff, however, did use the prison's grievance process as to this item as evidenced by copies of his internal complaints. (Doc. 46 Ex. B) Plaintiff must plead or prove that the prison's post-deprivation remedies are inadequate. *Id.*  Plaintiff does not do so.

The substantive due process component of the Fourteenth Amendment protects citizens from the arbitrary exercise of governmental power. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "The test applied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct 'shocks the conscience." *Id.*  Even assuming Joyce improperly returned the religious items, her conduct cannot be said to shock the conscience.  Because Roncone did not act improperly, his conduct

13

did not violate substantive due process.

For these reasons, the due process claims are dismissed with the exception of the procedural due process claim against Joyce.

### (5) Sections 1985 and 1986

While defendants moved for summary judgment on the basis that there is no evidence showing a conspiracy to deprive plaintiff of his rights, plaintiff failed to address these claims. Defendants are entitled to summary judgment for the reasons set forth in their motion.

### Conclusion

For the foregoing reasons, the Motion of Defendants Erik Roncone and Rebecca Joyce for Summary Judgment is granted except for plaintiff's official capacity RLUIPA claim and due process claim against Joyce.  Plaintiff's Motion for Summary Judgment is denied.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/17/09